Bernard KAGAN and Sherry Kagan, Plaintiffs,

v.

Donald Playford TAYLOR individually and on behalf of all those Underwriters of policy number 882/751533, Defendant.

No. 81 CIV 3629.

United States District Court, E.D. New York.

Feb. 8, 1983.

---

Weg, Myers & Jacobson, P.C., New York City, for plaintiffs; Andrew C. Jacobson, New York City, of counsel.

Ginsberg & Caesar, P.C., New York City, for defendant; David M. Ginsberg and Paul Kovner, New York City, of counsel.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is a suit on an insurance policy. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. The parties have filed motions under Fed.R.Civ.P. 56 for summary judgment. For the reasons developed below, the motions are denied.

## FACTS

Plaintiffs allege that on December 14, 1980, their home in Staten Island, New York was burglarized, and that $136,890 of their jewelry was taken. It is undisputed that the jewelry was specifically insured by defendant under Lloyd's All Risks Policy No. 882/71533 ("the policy"), which provided coverage in the event of loss due to burglary. The parties also agree that the policy was "in full force and effect" on the day of the purported burglary.

Defendant, however, alleges that plaintiffs' home was never burglarized or, that even if it was, the jewelry was not taken. Defendant regards the claim as a "scheme to defraud" and points to plaintiffs' failure to report the loss of their jewelry to the investigating police officer as evidence of their fraudulent intent.

In addition, defendant contends that plaintiffs have materially breached the terms of the policy by refusing to cooperate with the investigation of the claim. More particularly, defendant alleges that plaintiffs refused to give responsive answers to questions propounded during their examinations under oath, and that plaintiffs refused to produce certain tax returns that might indicate (1) plaintiffs' ownership of the jewelry, and (2) any casualty loss claimed by plaintiffs as a result of the burglary.[1]

---

1. Although defendant's answer contained no allegation of fraud or breach of contract, defendant has moved the Court to deem the an-

Plaintiffs counter by arguing that the terms of the policy do not require them to submit to examination under oath or to produce tax returns, but only to respond to reasonable requests by defendant in furtherance of the investigation—a requirement with which they vigorously contend they have complied.

## DISCUSSION

Rule 56 entitles a party to summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The opposing party, in order to prevail, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In determining the motion the Court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American B'casting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972).

### *Plaintiff's Motion For Summary Judgment*

■ Defendant has satisfied its burden under Fed.R.Civ.P. 56(e) by calling into question the alleged burglary of plaintiffs' home and their subsequent claim under the policy. Here, as in many insurance cases, the credibility of the insured is a key issue in assessing the validity of the claim. The general rule is that "[t]he credibility of affiants raises a material issue that can only be resolved by a trial." *Transway Finance Co., Inc. v. Gershon,* 92 F.R.D. 777 (E.D.N.Y.1982).

■ In addition, as was the case in *Gershon,* knowledge of the events underlying the claim lies exclusively with the moving party, thus rendering summary judgment singularly inappropriate. *Colby v. Klune,* 178 F.2d 872, 874 (2d Cir.1949). Under these circumstances, the insurer should be allowed at trial to probe the perceptions and motivations of the plaintiff; and the trier of the facts should be afforded the opportunity to observe the witness' demeanor, particularly under cross-examination. *Cross v. United States,* 336 F.2d 431, 433 (2d Cir.1964); *Chemical Bank v. Hartford Accident & Indemnity Co.,* 82 F.R.D. 376, 378 (S.D.N.Y.1979). Accordingly, plaintiffs' motion for summary judgment is denied.

### *Defendant's Cross-Motion For Summary Judgment*

Defendant bases its motion for summary judgment upon (1) plaintiffs' allegedly fraudulent conduct, and (2) plaintiffs' alleged refusal to cooperate with the investigation. After examining the affidavits of the parties, I conclude that unresolved issues of fact preclude summary judgment on either ground.

### (1) FRAUD

Although defendant's allegations of fraud raise sufficient questions to defeat plaintiffs' motion for summary judgment, the defendant has simply not demonstrated, as a matter of law, that plaintiffs engaged in

swer amended to the extent that such allegations constitute affirmative defenses. Plaintiffs oppose the motion on the ground that "[s]uch leave should be denied if the proposed affirmative defenses fail to state a claim." Plaintiffs' Reply Memorandum of Law at p. 1. Although I agree with plaintiffs that it is appropriate for the Court to consider the legal sufficiency of the proposed amendments, *see Brame v. Ray Bills Finance Corp.,* 85 F.R.D. 568, 588 (N.D.N.Y.1979), I find that these amendments are not "merely 'conclusory allegations' unsupported by evidence and contradicted by allegations in the original [answer]...." *Holt v. Katy Industries, Inc.,* 71 F.R.D. 424, 428 (S.D.N.Y.1976), *citing Billy Baxter, Inc. v. The Coca-Cola Com-* pany, 47 F.R.D. 345 (S.D.N.Y.1969); *aff'd,* 431 F.2d 183 (2d Cir.1970), *cert. denied,* 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971). Moreover, plaintiffs have failed to satisfy the Court that the granting of defendant's motion to amend would prejudice them in maintaining their action. *See* Fed.R.Civ.P. 15(b). Accordingly, defendant's motion to deem his answer amended to conform to the allegations in his affidavit is granted. *Cf. Rossiter v. Vogel,* 134 F.2d 908, 912 (2d Cir.1943) ("where facts appear in affidavits upon motion for summary judgment which would justify an amendment of the pleadings, such amendment should not be prevented by the entry of a final judgment.")

fraudulent conduct. Summary judgment is thus inappropriate.

Under New York law applicable to this action, *see Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 15 U.S.C. § 1012 (1976), fraud must be established by "clear and convincing" evidence. *C-Suzanne Beauty Salon, Ltd. v. General Insurance Company of America,* 574 F.2d 106, 111–12 & n. 9 (2d Cir.1978). Even in a case where the inference of fraud "is a strong one," New York's "clear and convincing" evidence rule presents a substantial obstacle which is not easily hurdled on a motion for summary judgment. *Cf. id.* (affirming District Judge's refusal to upset jury verdict for plaintiff despite strong inference of fraudulent claim).

The allegation of fraud rests almost entirely upon the inference drawn from plaintiffs' failure to timely report the loss of the jewelry to the investigating police officer. *See id.* at 112. Such evidence is far from clear and convincing.

### (2) MATERIAL BREACH OF CONTRACT

Defendant alleges that plaintiffs materially breached the "cooperation clause" of the policy by (1) refusing to give responsive answers under oath to questions about the loss,[2] and by (2) refusing to produce certain tax returns. The cooperation clause states:

> The assured shall in case of Loss and as a condition precedent to any right of indemnification in respect thereof give to the Underwriters such information and evidence as to the property lost and the circumstances of the Loss as the Underwriters may reasonably require and as may be in the assured's power.

Affidavit of Paul Kovner, dated November 23, 1983.

Defendant cites several New York cases for the proposition that the insured's failure to submit to examination under oath or to produce relevant tax returns precludes a suit on the policy.[3] It should be noted, however, that each of those cases involved New York's standard fire insurance policy, governed by N.Y.Ins.Law § 168, which provides in part:

> The insured, as often as may be reasonably required, shall ... submit to examination under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers ....

Section 168, Subd. 5, lines 113–119, N.Y. Ins.Law (McKinney Supp. 27, 1982–83). A comparison of the Lloyd's All Risks Policy's cooperation clause with that of the New York standard fire insurance policy discloses that the former is far less explicit about conditions precedent to suit.

Having examined the affidavits of the parties, I am unable to say, as a matter of law, that plaintiffs are in breach of the general language contained in the cooperation clause drafted by defendant.

Even if the terms of the policy require an insured to submit to oral examination under oath and to produce requested tax returns—an issue I need not now determine—

---

**2.** Defendant initially alleged that plaintiff "Bernard Kagan has refused to submit to an examination under oath, although duly demanded." Affidavit of Paul Kovner, dated November 23, 1982. In a subsequent affidavit, however, defendant's attorney stated: "Mr. Bernard Kagan did, in fact, appear for an examination under oath .... [However,] [t]o the best recollection of Mr. Ginsberg [defendant's co-counsel] Mr. Kagan refused to answer questions regarding the circumstances of the alleged burglary and his financial condition at the time of the burglary." Affidavit of Paul Kovner, dated December 9, 1982. Defendant's attorney explains this confusion by stating "that a mixup has oc-

curred and the reporter's notes of the examination of Mr. Kagan were thrown away without having been transcribed." *Id.* At any rate, no transcript of the examination is available to the Court.

**3.** *See, e.g., Do-Re Knit, Inc. v. National Union Fire Ins. Co.,* 491 F.Supp. 1334 (E.D.N.Y.1980); *Mortgage Affiliates Corp. v. Commercial Union Ins. Co.,* 27 A.D.2d 119, 276 N.Y.S.2d 404 (2d Dept.1967); *Happy Hank Auction Co., Inc. v. American Eagle Fire Insurance Company,* 286 A.D. 505, 145 N.Y.S.2d 206 (1st Dept.1955), *modified,* 1 N.Y.2d 534, 154 N.Y.S.2d 870, 136 N.E.2d 842 (1956).

defendant's unproven allegation that plaintiffs refused to answer various questions during the course of their examinations is an unacceptable foundation for summary judgment. Moreover, in view of plaintiffs' admission that no gift tax return was ever filed and no casualty loss was ever claimed for the jewelry,[4] it is conceivable that their tax returns are not relevant to defendant's investigation. If this is so, plaintiffs' refusal to produce these tax returns prior to suit may not rise to the level of a material breach of the contract's general cooperation provisions.

The New York Court of Appeals has reached a similar result in evaluating the propriety of summary judgment in cases where the parties dispute the scope of an insured's duty to cooperate under the more explicit terms of New York's standard fire insurance policy. The language of *Happy Hank Auction Co., Inc. v. American Eagle Fire Insurance Company,* 1 N.Y.2d 534, 538, 154 N.Y.S.2d 870, 136 N.E.2d 842 (1956) is instructive:

> As to plaintiff's refusal to show or give defendants access to copies of plaintiff's tax returns, there not only is an arguable question as to whether such production was required by the policy ... but a further question as to whether the inventory figures thereon would be *material to the dispute as to the fire damage* ....
> [T]he dispute as to whether there was a willful and fraudulent withholding of information required by the policy is essentially the kind of question of fact that cannot, except in the most extreme cases, *be resolved through study of affidavits.* A trial might or might not result in a finding that the papers and data demanded were material and that there had been a hiding thereof, willfully and with wrongful intent.

For all of the foregoing reasons, then, defendant's cross-motion for summary judgment must be denied and the case ordered to trial.

Plaintiffs' motion for an award of costs incurred in responding to defendant's cross-motion for summary judgment is denied.

SO ORDERED.

---

**4.** Affidavit of Sherry Kagan, dated December 7, 1982.