2423 MERMAID REALTY CORP. et al., Appellants, v NEW YORK PROPERTY INSURANCE UNDERWRITING ASSOCIATION, Respondent-Appellant.

Second Department, November 21, 1988

**APPEARANCES OF COUNSEL**

*Scher & Eliasberg, P. C. (Robert A. Scher* on the brief), for appellants-respondents.

*Feldman & Rudy (Gerald F. Kirby* and *Donald J. Feldman* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

WEINSTEIN, J.

The issue to be addressed on the instant appeal and cross appeal is whether the principal of a closely held corporation should be required to submit his personal income tax returns for inspection and copying by the insurer on a claim

for fire losses or otherwise risk an invalidation of the underlying policy where the subject fire was incendiary in nature. Here, the corporate plaintiff 2423 Mermaid Realty Corp. and Jack Sandelman, the president and sole shareholder of the corporate plaintiff, challenge the granting of the defendant insurer's motion for summary judgment on their complaint seeking declaratory relief vis-à-vis the insurer's right to the individual plaintiff's income tax returns. The plaintiffs explicitly challenge that portion of the order appealed from which declared that they were required to furnish the 1984 and 1985 Federal and New York State personal income tax returns of the individual plaintiff for the purpose of allowing the defendant to inspect and make written notations of the information contained therein. On the cross appeal, the defendant insurer maintains that all of its demands for documents were material and relevant and, furthermore, that the denial of its request for the production of exact copies of the subject income tax returns was improper. Consistent with the principle that an individual may not refuse to assist with his insurer's investigation on constitutional grounds without voiding his fire insurance policy (see, Dyno-Bite, Inc. v Travelers Cos., 80 AD2d 471, appeal dismissed 54 NY2d 1027), we conclude that a similar rule applies when the individual whose cooperation and assistance is sought is a corporate officer and the sole shareholder of the insured corporation. Accordingly, the order appealed from should be modified by adding a provision declaring that the defendant is permitted to make copies of Sandelman's 1984 and 1985 Federal and New York State personal income tax returns which are to be submitted for its inspection, and as so modified, the order should be affirmed.

### BACKGROUND

The corporate plaintiff is a domestic corporation with its principal place of business at 2423 Mermaid Avenue in Brooklyn. The premises were insured against risks of fire pursuant to a valid policy issued by the defendant and in effect for the term extending from September 27, 1984 through September 27, 1985. The fire loss for which insurance proceeds were sought allegedly occurred on or about April 5, 1985. The plaintiff Jack Sandelman, who, as previously noted, was the president and sole shareholder of 2423 Mermaid Realty Corp., was also the president and sole proprietor of Neptune Hardware, Incorporated, which had been in operation for approximately six years at the time of the fire. The subject premises

had been purchased by the corporate plaintiff for the purpose of converting a portion thereof into a business use. At the time of the fire, the upper floors of the building were occupied as rental units for residential purposes. As a consequence of their losses, the plaintiffs sought to be indemnified by the defendant in the sum of $30,000, the face amount of the policy.

After a physical inspection of the fire-damaged premises, the defendant retained the services of Michael J. O'Connor, a fire investigator, to ascertain the origin and cause of the fire and to investigate the circumstances surrounding it. In a written report prepared subsequent to his examination of the premises, the investigator concluded that the fire had been of an incendiary origin. The report was accompanied by the findings of the New York City Fire Department in which a Fire Marshal had also classified the fire as incendiary in nature.

The policy under which the damaged premises was insured contained a requirement that the insured give immediate written notice to the defendant of any loss and that it take appropriate steps to protect the property from further damage. Included in the policy under the heading "Requirements in case loss occurs" was the following standard language which is commonly designated a cooperation clause: "The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made".

In accordance with the cooperation clause, the defendant arranged for the deposition of the plaintiff Jack Sandelman on July 2, 1986. At the direction of his counsel, Sandelman did not answer any questions relating to his personal finances.

The plaintiffs thereafter sent to the defendant photocopies of various bills, including certain tax and utility bills, together with money order receipts representing the payments thereof. While acknowledging an agreement to forward a copy of the corporation's tax return to the defendant for inspection, the plaintiffs' counsel expressed an uncertainty with respect to

allowing the defendant to view Sandelman's personal tax returns. Counsel expressly disagreed with the notion "that an insurance company has the right to pry into the personal affairs of the President of an insured merely because he happens to be an officer of the company or a stockholder or the like". Counsel further asserted that the standard insurance contract did not enumerate tax returns among the category of documents required to be furnished by an insured. As an attempt at compromise, counsel offered to make available for inspection, but not for copying, the 1984 and 1985 personal income tax returns of the individual plaintiff. In a letter to the defendant's counsel, the following caveat was expressed: "[P]lease do not interpret this as a refusal by the corporate insured since the tax returns which you seek are not the property of the corporation and are totally without the control of the corporation, it be *[sic]* a strictly personal decision on Mr. Sandelman's part and not the decision of the corporation not to produce Mr. Sandelman's personal returns".

In reply to this letter, the defendant's counsel took the position that the cooperation clause of the insurance policy could not be fulfilled unless and until all of the outstanding items requested were supplied. The insurer's underlying premise was succinctly stated in the following excerpt from a letter to the plaintiffs' counsel dated September 5, 1986: "New York Property considers the financial condition of an insured to be highly material to any investigation into a claim of this nature. Obviously, where the insured is a close corporation owned by one person, the financial condition of that person is also highly material. It is for this reason that we called for the production of not only the insured corporation's tax returns, but those of the President and sole owner of the corporation as well".

In an attempt to satisfy the defendant's requests for information, the plaintiffs unsuccessfully sought to locate copies of rent receipts, certain fuel bills and "Quigg estimates" pertaining to renovations of the insured premises prior to the fire loss. After submitting to the defendant copies of the corporate plaintiff's 1984 and 1985 tax returns, and agreeing to produce the individual plaintiff for a further examination under oath, the plaintiffs' counsel remained intransigent with respect to the defendant's attempts to examine the individual plaintiff's personal income tax returns.

Cognizant of the defendant's warning that a refusal to

comply with its requests for disclosure might lead to the invalidation of the fire insurance policy, the plaintiffs commenced the instant action for a judgment declaring that those requests were improper, that the failure to comply with those requests would not invalidate the policy of insurance, and that the plaintiffs had the right to refuse to reply and to withhold the financial material sought. Additionally, the plaintiffs sought to stay the defendant pendente lite from invalidating the underlying policy. The defendant thereupon counterclaimed, *inter alia,* for a declaration that Sandelman is obligated to produce his 1984 and 1985 personal income tax returns and that the failure to produce same would constitute a material breach of the contract of insurance. Shortly thereafter, the defendant moved for summary judgment, *inter alia,* dismissing the complaint based on the plaintiffs' failure to supply all material information and documents to the defendant during the course of its investigation. The plaintiffs crossmoved for summary judgment. In the order appealed from the trial court granted the defendant's motion to the extent of dismissing the complaint and granting so much of the defendant's counterclaim as sought a declaration that the plaintiffs were required to produce for its inspection the 1984 and 1985 Federal and New York State personal income tax returns of the individual plaintiff. The defendant was authorized to make written notations of all information contained therein. The plaintiffs' cross motion for summary judgment in their favor was denied. The instant appeal and cross appeal are taken therefrom.

## DISCUSSION

The plaintiffs' position, in essence, is that it was patently unjust to place them in a position whereby their efforts to protect the individual plaintiff's personal tax records from the prying eyes of the defendant have jeopardized the continuing validity of the underlying fire insurance policy. On the other hand, it cannot be gainsaid that financial motive is a highly relevant and material area of inquiry in a civil arson case. From the time the defendant was initially apprised of the incendiary origin of the fire, it had a bona fide purpose in investigating the legitimacy of the plaintiffs' claim. Generally, the underlying purpose of a cooperation clause in a fire insurance policy is to permit the insurer to exercise its right under the policy to investigate the legitimacy of a claim by a policyholder. Where, as here, the fire from which the subject

claim has emanated has been found to be incendiary in nature, the need for the insurer to conduct its investigation into all relevant and material areas of inquiry is obvious. The possible financial motive of the president, who also happens to be the sole shareholder and the sole officer of this closely held corporation, to reap the insurance proceeds from the loss of the corporation's sole asset clearly falls within the ambit of a relevant and material area of inquiry. Accordingly, the threshold issue on this appeal is whether the existence of a corporate entity should be utilized, under the circumstances, to frustrate the underlying purpose of the cooperation clause and to effectively thwart the defendant's interest in protecting itself against potentially fraudulent claims. We conclude that it should not.

In the seminal case of *Claflin v Commonwealth Ins. Co.* (110 US 81, 94-95), the United States Supreme Court set forth the general policy that an insurer is entitled "to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims". Consistent therewith, the law is well settled that an insured's failure to comply with the standard clause of his fire insurance policy requiring disclosure by way of submission to an examination under oath, as often as may be reasonably necessary, as a condition precedent to the insurer's performance of its promise to indemnify, constitutes a material breach and is an absolute defense to an action to recover on the policy *(see, Azeem v Colonial Assur. Co.,* 96 AD2d 123, 124, *affd* 62 NY2d 951; *Bulzomi v New York Cent. Mut. Fire Ins. Co.,* 92 AD2d 878; *Dyno-Bite, Inc. v Travelers Cos., supra,* at 475; *Catalogue Serv. v Insurance Co.,* 74 AD2d 837; *Pogo Holding Corp. v New York Prop. Ins. Underwriting Assn.,* 73 AD2d 605, 606). The apparent function of such a cooperation clause "is to enable the insurer to obtain all knowledge and facts concerning the cause of the fire and the loss involved while the information is fresh in order to protect itself from fraudulent and false claims" *(Hudson Tire Mart v Aetna Cas. & Sur. Co.,* 518 F2d 671, 674). Reasonable inquiry concerning an insured's knowledge of the cause of the fire and possible arson is manifestly relevant and material inasmuch as a finding that the insured committed arson would excuse payment under the policy. "To that end, an insurer may demand that the corporate officers and employees appear, be examined and assist in the investigation as the

policy requires them to do or that the corporation be precluded from recovering under the policy" *(Dyno-Bite, Inc. v Travelers Cos., supra,* at 474).

A valid distinction has been cast between actions to recover on fire insurance policies and automobile insurance cases involving injured third parties who are in no respect responsible for the insured's failure to cooperate with his carrier and are unable to enforce such cooperation *(see, Wojna v Merchants Ins. Group,* 119 Misc 2d 734, 737). Inasmuch as an insured under a fire insurance policy, unlike the injured third party in an automobile insurance case, has the capacity to control his own fate, neither an individual insured nor the principals of a corporate insured may invoke the Fifth Amendment privilege against self-incrimination to frustrate their carrier's efforts to investigate their claims *(Dyno-Bite, Inc. v Travelers Cos., supra,* at 476). The United States Court of Appeals for the Second Circuit has recently affirmed an order of contempt entered against an individual who, while acting in his capacity as an agent of a corporation, claimed a Fifth Amendment privilege against producing corporate documents pursuant to a court order *(United States Secs. & Exch. Commn. v First Jersey Secs.,* 843 F2d 74).

In light of the foregoing, the propriety of calling upon the individual plaintiff to assist in the defendant's investigation is beyond reproach. The focus of our inquiry now shifts to the nature of the assistance sought, more specifically, to the propriety of the defendant's demands for copies of Sandelman's personal tax returns for the specified years 1984 and 1985.

■ In view of the fact that direct proof of arson is seldom available, courts have recognized that the requisite degree of proof can be satisfied in civil cases by circumstantial evidence *(Elgi Holding v Insurance Co.,* 511 F2d 957, 959). Information gleaned from the tax returns of an individual insured or the officers of a corporate insured can be of crucial significance in that regard. In *Averbuch v Home Ins. Co.* (114 AD2d 827), this court held that the plaintiff insured's willful refusal to answer material and relevant questions at his examination under oath by the defendant and to supply material and relevant documentation, including a requested copy of his 1982 Federal income tax return, constituted a breach of substantial conditions of the policy. More recently, this court has asserted the principle that the failure of a corporate insured's officers to assist with the insurer's investigation into an incendiary fire

loss by supplying the insurer with material and relevant documentation relating to their financial status at the time of the fire constituted a breach of the cooperation clause *(Ausch v St. Paul Fire & Mar. Ins. Co.,* 125 AD2d 43, *lv denied* 70 NY2d 610). Included in the list of documents which had been requested but which were not produced on behalf of the insured in that case were the individual plantiff's personal Federal tax returns for the years he managed and purportedly owned the corporation *(Ausch v St. Paul Fire & Mar. Ins. Co., supra,* at 49).

*Kisting v Westchester Fire Ins. Co.* (290 F Supp 141, *affd* 416 F2d 967) involved a factual scenario which is somewhat analogous to the one at bar. The individual plaintiff's refusal to answer material questions propounded to him by the insurer under oath concerning, *inter alia,* his personal income tax return for 1965, constituted a breach of the policy provisions and a bar to recovery on the fire insurance policy. The United States District Court for the Western District of Wisconsin found, in effect, that the individual plaintiff's refusal to answer in his capacity as an insured was attributable to the corporate insured as well. The court stated: "[P]laintiffs appear to contend that all of the questions propounded to Kisting [the individual plaintiff] were propounded to him in an individual capacity and, therefore, no basis exists for a ruling against Anchor [Sales Co.]. I cannot agree with this reasoning. Under the policy provision in question, the insured agrees to submit to an examination under oath. The insured in this case consisted of both plaintiffs. When Kisting refused to answer certain questions he was clearly acting for Anchor. This is particularly true with regard to the questions relating to Exhibit 15 which Kisting himself submitted to Westchester. By submitting this exhibit Kisting sought recovery for himself and Anchor under the policy. In refusing to answer questions about its preparation Kisting cannot claim that he was not then also acting for Anchor. Plaintiffs' reasoning would make a mockery of the policy provision in question" *(Kisting v Westchester Fire Ins. Co., supra,* at 150). Notwithstanding the fact that, in the instant case, Sandelman was not designated as an insured under the subject fire insurance policy, it is beyond cavil that the financial condition of an insured corporation's sole shareholder and sole officer is relevant and material to any insurance company in its investigation of a fire loss claim.

The legitimacy of the defendant's disclosure requests is

further enhanced by the fact that the 1984 corporate tax return submitted by the plaintiffs disclosed that 2423 Mermaid Realty Corp. claimed a net operating loss. Sandelman maintained that he was unable to find certain fuel bills and rent receipts pertaining to corporate affairs. He was additionally unable to produce "Quigg estimates" regarding renovations to the insured premises prior to the fire loss. Under the circumstances, his inability to produce those records is suspicious and suggests that the estimated costs may have been substantial. The record also contains a discrepancy with respect to the filing of the corporate plaintiff's 1985 tax return. Although the plaintiffs' counsel at one point indicated that no return was prepared inasmuch as the corporation showed no profit, a copy of the 1985 return was ultimately submitted to the defendant's counsel. Given the facts that the corporation was operating at a net loss and that the fire which gave rise to the subject claim was incendiary in origin, it was imperative for the insurer to ascertain the fiscal and operational soundness of the corporate enterprise and to assess its over-all effect on Sandelman's personal financial situation. To that end, the defendant was entitled to review the specified personal tax returns of the individual plaintiff in order to ascertain whether he may have had a motive to have his property destroyed *(see, Anderson v General Acc. Fire & Life Assur. Corp.,* 58 AD2d 568). Since, as a general rule, corporations necessarily cooperate or fail to do so by virtue of the actions of their agents, it was only through Sandelman that the corporate insured in this case could assist in the subject investigation *(see, Dyno-Bite, Inc. v Travelers Cos., supra,* at 475). A continued refusal by Sandelman to answer questions concerning his personal finances or to produce the requested tax returns would constitute a direct violation of the cooperation clause. Inasmuch as such a situation would not be one where the insured substantially performed its obligation to cooperate under the policy but fell short through some unimportant omission *(see, Lentini Bros. Moving & Stor. Co. v New York Prop. Ins. Underwriting Assn.,* 53 NY2d 835, 836), the plaintiffs' cross motion was properly denied.

The sole remaining question is whether the court properly denied the insurer's request for the production of exact copies of Sandelman's personal income tax returns. The cooperation clause of the underlying policy unequivocally permits the insurer to make "extracts and copies" of the documents produced by the insured in the course of the investigation of

the claim. Having established the insurer's right to review the subject tax returns in this case, we perceive no reason to create an artificial distinction between the tax returns and other material produced for the insurer's examination pursuant to the cooperation clause. Accordingly, the defendant should be permitted to make copies of the tax returns which Sandelman must produce. Furthermore, we concur with the defendant that, as a practical matter, the reproduction of documents avoids the problem of potential errors in dictation or longhand copying from an original source.

In conclusion, the defendant, which had a bona fide reason to investigate the plaintiffs' claim once it had been apprised of the incendiary nature of the fire, was properly permitted to seek personal financial information from the one individual responsible for coordinating the affairs of the corporate insured. Furthermore, for the reasons previously discussed, the order appealed from should be modified to give the defendant the right to make photocopies of the individual plaintiff's 1984 and 1985 Federal and New York State personal income tax returns which are to be submitted for its inspection, and as so modified, affirmed.

THOMPSON, J. P., BROWN and LAWRENCE, JJ., concur.

Ordered that the order is modified, on the law and in the exercise of discretion, by adding a provision declaring that the defendant insurer is permitted to make copies of the plaintiff Sandelman's 1984 and 1985 Federal and New York State personal income tax returns which are to be submitted for its inspection; as so modified, the order is affirmed, with costs to the defendant; and it is further,

Ordered that the plaintiff Sandelman shall produce his 1984 and 1985 Federal and New York State personal income tax returns at a time and place to be set by the defendant in a written notice of not less than 10 days, or at such time and place as the parties may agree.