**AETNA CASUALTY & SURETY CO., Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Defendant.**

Civ. A. No. 90–535.

United States District Court, W.D. Pennsylvania.

Aug. 20, 1991.

Joseph W. Selep, Scott G. Dunlop, Pittsburgh, Pa., for plaintiff.

Thomas F. Weis, Pittsburgh, Pa., for defendant.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

Before the Court at this time is plaintiff Aetna Casualty and Surety Company's Motion to Amend Judgment (docket no. 22A), which seeks judgment in Aetna's favor, notwithstanding a jury's verdict in favor of defendant State Farm Mutual Automobile Insurance Co. Aetna sought indemnification from State Farm for a claim that it paid under its uninsured motorist's coverage after State Farm disclaimed liability coverage to the alleged driver of a State Farm insured automobile. After review of

the record, the Court denies Aetna's motion.

The circuits are split on the question whether the standard for review of a motion for j.n.o.v. in a diversity matter is dictated by federal procedural law or state substantive law. *Compare Miles v. Tennessee River Pulp and Paper Co.*, 862 F.2d 1525 (11th Cir.1989) (federal); *Foster v. Ford Motor Co.*, 616 F.2d 1304 (5th Cir.1980) (federal); *Oldenburg v. Clark*, 489 F.2d 839 (10th Cir.1974) (federal); with *J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co.*, 936 F.2d 1474 (6th Cir.1991) (state law); *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373 (7th Cir.1990) (state law). The Third Circuit has held that there is no difference between federal and Pennsylvania law on this point. *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 757–58 (3d Cir.1977). It is necessary therefore to "determine whether, as a matter of law, the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *id.* (citation omitted).

The evidence presented at trial showed that on August 8, 1987, Milton R. Seiler was struck by an automobile and killed while walking across a roadway in Allegheny County's South Park. Mr. Seiler had uninsured motorist's coverage through a policy issued by Aetna. The automobile which struck Seiler was driven by Mona Dobbins, and was leased by Ms. Dobbins' employer, the Brookline Social Club.[1] The automobile was insured by State Farm, with liability limits of $100,000/$300,000.

Ms. Dobbins left the scene of the accident after striking Seiler without identifying herself, and was later charged with several motor vehicle code offenses, including homicide by vehicle. 75 Pa.C.S. § 3732 (Purdons 1991 Supp.). Ms. Dobbins retained an attorney to defend herself in the criminal prosecution. When State Farm investigators investigating the death of Mr. Seiler requested a statement from her concerning the accident, Ms. Dobbins referred them to her attorney, who advised State Farm that she would not give any statement to State Farm because of its potential to incriminate her. The criminal defense attorney did tell State Farm's representative that he was willing to have Ms. Dobbins interviewed by a defense attorney retained by State Farm who could advise State Farm whether it owed a duty to defend and indemnify Ms. Dobbins in any civil action. State Farm rejected this option.

■ Criminal charges against Ms. Dobbins were ultimately dismissed or withdrawn because of insufficient evidence identifying her as the driver of the vehicle which struck Mr. Seiler. Because the charges were not disposed of after jeopardy attached they could have been refiled against Ms. Dobbins until the statute of limitations ran on August 8, 1989. *See* 42 Pa.C.S. § 5552(a) (Purdons 1991 Supp.). Compare the current statute of limitations, *id.*, § 5551(5).

The representative of Mr. Seiler's estate filed a civil suit against Ms. Dobbins in December, 1987. State Farm had sent Ms. Dobbins a reservation of rights letter on August 24, 1987, and did not appoint counsel to defend her in the civil suit. Ms. Dobbins' criminal defense attorney may have entered an appearance in that suit, but because Ms. Dobbins was judgment proof she had no great concern for the outcome of that action. N.T. 204–05. Mr. Seiler's estate obtained a default judgment against Ms. Dobbins on February 21, 1989. On March 20, 1989, and March 27, 1989, State Farm sent letters to Ms. Dobbins, denying coverage under its liability policy issued to the Brookline Social Club and refusing to defend or indemnify her because of her refusal to cooperate with State Farm's investigation.

After State Farm denied coverage, the representative of Mr. Seiler's estate submitted an uninsured motorist's claim to Mr. Seiler's insurer, Aetna. A panel of arbitrators heard the evidence of negligence, com-

---

**1.** Ms. Dobbins married Frank R. Torchia in July, 1989. Frank R. Torchia's father, Frank A. Torchia, was the owner of the Brookline Social Club. Throughout this memorandum, Mona Dobbins Torchia will be referred to as Ms. Dobbins.

parative negligence, and damages, and awarded Mr. Seiler's estate $156,000. Aetna thereafter filed this action, seeking indemnity from State Farm for the full $156,000 it paid to the estate.

At trial, State Farm defended its disclaimer of coverage for Ms. Dobbins on two grounds: (1) that Ms. Dobbins was not a permissive user of the automobile and (2) that Ms. Dobbins breached the cooperation clause of State Farm's policy. State Farm's lack of permissive use defense was based on the rather weak evidence of a statement at the coroner's inquest shortly after the accident by Frank Torchia, the owner of the Brookline Social Club, that implied that Ms. Dobbins was not permitted to drive the vehicle at the time of the accident. N.T. 130, 133, 180; See N.T. 260. The jury properly rejected this theory of defense.

█ The jury found, however, that Ms. Dobbins had breached her duty to cooperate with State Farm and that State Farm had suffered substantial prejudice as a result. With respect to the breach of the cooperation clause defense, Pennsylvania law provides that for a disclaimer of coverage to be valid the insurer must prove (1) that the putative insured breached its duty to cooperate in the insurer's investigation and defense of a claim, and (2) that the insurer suffered substantial prejudice as a result. *Paxton National Ins. Co. v. Brickajlic*, 513 Pa. 627, 522 A.2d 531 (1987); *Brakeman v. Potomac Insurance Company*, 472 Pa. 66, 371 A.2d 193 (1977); *Cameron v. Berger*, 336 Pa. 229, 7 A.2d 293 (1939). State Farm's defense on this point was that the evidence of the identity of the driver and the comparative negligence of Mr. Seiler were disputed issues and the absence of any statement by the alleged driver of the vehicle which struck Mr. Seiler materially impaired State Farm's ability to defend against any civil claim by the Seiler estate. The Court charged the jury on this defense, N.T. 311–12, and repeated the instruction on the definition of substantial prejudice at the request of the jury. N.T. 322–26.

Aetna first seeks a ruling that as a matter of law Ms. Dobbins has a Fifth Amendment privilege against self incrimination which excuses her from any contractual duty to cooperate in the investigation of defense of a civil claim. Aetna submits in support only *Wojna v. Merchants Ins. Group*, 119 Misc.2d 734, 464 N.Y.S.2d 664, 666 (1983) and *2423 Mermaid Realty v. New York Property Ins.*, 142 A.D.2d 124, 534 N.Y.S.2d 999 (1988). Not only is neither case binding authority, neither is persuasive authority because the rationale offered in *Wojna*—that a third party should not be deprived of liability coverage by an insured's failure to cooperate—is inapplicable here. Aetna seeks indemnity for a claim paid to the Seiler estate, not subrogation to a claim by the Seiler estate against State Farm. The Seiler estate has been compensated and its interest in liability coverage protected by Pennsylvania's mandatory uninsured motorist's coverage.

█ More importantly, Aetna's argument that a Fifth Amendment privilege trumps the insurance policy's duty to cooperate requirement falls of its own weight. A person may not be penalized for asserting the Fifth Amendment privilege against self incrimination, but that does not mean that if a person refuses to make a statement in a civil proceeding that the failure to provide evidence may not have adverse consequences. *See Peiffer v. Lebanon School District*, 848 F.2d 44 (3d Cir.1988). In *Peiffer*, a school board refused to grant a school district employee a postponement of a disciplinary hearing pending the disposition of criminal charges against the employee arising out of the same incident. The Court of Appeals held that the facts that the employee chose to remain silent and that the evidence presented without his statement led the school district to discharge him did not permit the conclusion that the employee's Fifth Amendment rights were violated. To the same effect, the Ninth Circuit held in *Sherman v. Babbitt*, 772 F.2d 1476 (9th Cir.1985), that a motorist's criminal conviction for failure to give proof of financial responsibility upon request by a police officer did not violate the Fifth Amendment. That Court stated:

"The statute does not *compel* Sherman to produce an insurance certificate but gives him the choice to comply or to refuse and face the attendant penalties." 772 F.2d at 1478 (emphasis in original). It is also settled law that a civil litigant's assertion of the Fifth Amendment permits an adverse inference against the litigant with respect to the matter for which the privilege is claimed. *See Hudak v. Woods*, 743 F.Supp. 374, 377 (W.D.Pa.1990) (Lee, J.). Aetna advances no persuasive reason why an assertion of the Fifth Amendment should expose the person claiming the privilege to adverse consequences in judicial proceedings but give blanket immunity to the claimant in other contexts.

As the Supreme Court stated in *United States v. Rylander*, 460 U.S. 752, 759, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983), allowing a litigant to be held in civil contempt despite his asserting the Fifth Amendment privilege as a defense to responding to questions concerning compliance with an IRS subpoena:

> That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination. (quoting *Williams v. Florida*, 399 U.S. 78, 84 [90 S.Ct. 1893, 1897, 26 L.Ed.2d 446] (1970)).

Aetna's argument would not only be contrary to the principle that the Fifth Amendment is a "shield against self-incrimination", *Rylander*, 460 U.S. at 758, 103 S.Ct. at 1552, and not a "sword whereby a claimant asserting the privilege would be freed" *id.*, from discharging duties imposed by otherwise valid policies, it would make the Fifth Amendment a peculiarly single-edged sword which would allow Mona Dobbins' silence to be used in the civil liability action against her financial interest, *see Penfield v. Venuti*, 589 F.Supp. 250, 254–57 (D.Conn.1984), but not in the civil indemnity action in which she has no interest.

Aetna's argument that Ms. Dobbins' Fifth Amendment privilege excuses her breach of the contract as a matter of law is rejected.

A more cogent argument can be made by Aetna that State Farm did not carry its burden of showing that it was substantially prejudiced by Ms. Dobbins' failure to cooperate. Aetna argues that State Farm could have (1) appointed a criminal defense attorney for Ms. Dobbins who, protected by the attorney-client privilege, could have taken a statement from Ms. Dobbins concerning her operation of the vehicle that struck Mr. Seiler; (2) entered a defense in the civil action by the Seiler estate under a reservation of rights and then moved to stay the civil proceedings until the statute of limitations had run; or (3) obtained information from a variety of other sources, including Joseph Balestra of the Brookline Social Club, and James Coyle, an eyewitness to the accident.[2]

Aetna's initial argument, which it advanced at trial in its examination of State Farm's claims manager, N.T. 187–89, is based on an erroneous view of the attorney-client privilege. Aetna suggests that State Farm could easily have appointed an attorney to defend Ms. Dobbins who would have been able to inform State Farm of "her side of the story." N.T. 187. The act of disclosing that information to State Farm would have been a breach of the privilege, however, as State Farm's representative pointed out to counsel for Aetna. N.T. 188. Even Aetna's more limited argument, that the criminal defense counsel could have informed State Farm in summary form whether the civil claim against Ms. Dobbins by the Seiler estate should be defended, suffers from the same flaw that it necessarily exposes the content of Ms. Dobbins' confidential statement. Aetna's hypothetical appointed attorney could advise State Farm that the claim needed to be defended if and only if Ms. Dobbins admit-

---

**2.** Aetna claims that Gloria Rockey, State Farm's claim representative, admitted at trial that she knew that the insured vehicle was the vehicle involved in Mr. Seiler's death when she made the decision to deny coverage. Aetna's Memo- randum, 14. In fact, Ms. Rockey testified that she assumed that the insured vehicle was the vehicle and that Ms. Dobbins could have been the driver. N.T. 142; 164–65; 176; 178.

ted driving. Although it would be an ambitious prosecutor who would build the prosecution against Ms. Dobbins based on an investigation of the basis of the insurance claims manager's decision, no defense counsel could ethically give a claims manager information which would create that risk. *See* N.T. 209–10.

 Aetna's second argument, that State Farm could have entered an appearance for Ms. Dobbins under a reservation of rights and moved to stay the civil action against Ms. Dobbins until the statute of limitations had run, also does not suffice to overturn the jury's verdict as a matter of law. Aetna argues here, as it did at trial, that State Farm's stewardship of Ms. Dobbins' defense was inadequate and it was seeking from the outset to disclaim coverage to Ms. Dobbins, not to determine whether it had a fair duty to represent her. The argument, however, is one which the jury rejected.

Aetna's argument that as a matter of law the Court of Common Pleas of Allegheny County would have been *required* to stay the civil action pending the running of the statute of limitations is plainly wrong. First, as a *reductio ad absurdum*, Aetna's argument would require the perpetual stay of the action if Ms. Dobbins had been charged with voluntary manslaughter (or today, if charged with vehicular homicide). *See* 42 Pa.C.S. § 5551 (Purdons 1981), and *id.*, § 5551(5) (Purdons 1991 Supp.). Second, the authority cited by Aetna does not support the proposition that a stay of the action against Ms. Dobbins would have been constitutionally required. *Wehling v. CBS*, 608 F.2d 1084, 1087–89, *rehearing denied*, 611 F.2d 1026 (5th Cir.1979), and *Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co.*, 14 F.R.D. 333 (E.D.Pa. 1953), go only so far as to establish the permissibility of a partial stay of *discovery*. The Fifth Circuit emphasized, on the petition for rehearing in *Wehling v. CBS*, 611 F.2d 1026, 1027, that it did not stay the trial of the *lawsuit*, nor prevent the use of the sanction of dismissal against the plaintiff who had sought the stay if the stay proved prejudicial to the defendant. Final-

ly, Aetna introduced no evidence from which the jury could have concluded as a matter of fact that there was a likelihood that a motion to stay would have been successful.

 This judge finds Aetna's third argument, that Ms. Dobbins' statement was merely cumulative of other available evidence, more persuasive. Whether Ms. Dobbins' refusal to make any statement in connection with the investigation of Mr. Seiler's death impaired State Farm's defense of the claim against her or whether State Farm could have obtained from James Coyle, Carolyn Meadows, and persons associated with the Brookline Social Club, all of the information it needed for the defense of the claim by the Seiler estate is, however, quintessentially a question of fact. The jury found that the effect of Dobbins' refusal was to substantially prejudice State Farm's investigation and defense. Their decision, while of doubtful correctness, cannot be said to be irrational or devoid of support in the record. *See* N.T. 148–52; 170–76. The motion for judgment n.o.v. is denied.

