**RICHIE'S CORNER, INC. t/a Food Express, Plaintiff,**

v.

**NATIONAL SPECIALTY INSURANCE COMPANY, et al., Defendants.**

No. 08 Civ. 4467(BMC).

United States District Court, E.D. New York.

Dec. 23, 2008.

David Louis Cohen, David Louis Cohen, Esq., Kew Gardens, NY, for Plaintiff.

Stanley W. Kallmann, Michael S. Leavy, Gennet, Kallmann, Antin & Robinson, P.C., New York, NY, for Defendants.

---

## MEMORANDUM DECISION AND ORDER

COGAN, District Judge.

This removed diversity case involves the denial of an insurance claim stemming from a premises fire. The defendant insurance company claims that plaintiff, who it suspects of arson, failed to cooperate in its investigation of the claim in violation of plaintiff's obligation under the policy. The case is before me on defendant's motion for summary judgment. I hold that plaintiff breached its obligation under the policy and I therefore grant the motion.

## BACKGROUND[1]

Plaintiff ran a delicatessen in Queens. On October 9, 2006, a fire occurred. The Fire Department concluded that arson was the cause of the fire. There were a number of circumstances, such as the fact that the business was for sale at the time of the fire and owed $30,000 in rent, as well as the testimony of plaintiff's principal, Sal LaBarca, concerning his movements in the middle of the night at the scene and time of the fire, that caused the insurance company to believe that LaBarca had set the fire. Although the insurance company is also defending this case on the basis of arson, that issue is not directly before me on this motion.

Under the insurance policy, plaintiff had a duty to cooperate in defendant's investigation of the fire and to answer questions under oath. Specifically, the policy provided that in the event of loss or damage, the insured had the duty to permit the insurance company to "examine your books and records," make copies of those records, and "[c]ooperate with us in the investigation and settlement of the claim." In addi-

tion, the insurance company had the right to "examine any insured under oath ... about any matter relating to this insurance or the claim, including an insured's books and records."

Pursuant to that obligation, plaintiff produced, at defendant's request, a number of financial records and testified twice under oath. Included among these records were LaBarca's personal credit report, books and records of plaintiff's business and La-Barca's other businesses, mortgage statements for LaBarca's home and investment properties, bank statements, credit card statements, and a copy of LaBarca's 2005 U.S. Income Tax Return.

The tax return showed about $9000 in income for the year. When asked at the examination under oath to confirm that the tax return accurately reflected his income, LaBarca's attorney instructed him not to answer. The insurance company's attorney cautioned LaBarca and his attorney that failure to answer might be deemed a breach of the duty of cooperation in the policy: "You direct your witness not to answer at an examination under oath at your own peril. You're going to direct him not to answer, then it raises cooperation issues." The insurance company lawyer persisted in repeating the question more than once, and LaBarca, on his attorney's advice, was equally persistent in refusing to answer. He was again cautioned:

> Just so we have it very clear. You know this is an arson fire, you know that motive to commit arson is an issue in a potential arson case, and you're directing him not to answer a question addressed to whether all of the wages, salaries and tips he had in the entire

---

1. The Court has taken these undisputed facts from the exhibits submitted by the parties, It has disregarded the parties' Rule 56.1 statements, as the purported statements by both sides consisted, instead, of attorney affidavits containing hearsay, opinion, and legal conclusions and argument. It is not sufficient under Rule 56.1 to submit an attorney's affidavit that consists only of additional argument and simply label it "Rule 56.1 Statement."

year 2005 was $9000? Just so I understand that.

\* \* \*

And I would again respectfully suggest that failure to cooperate with the insurer's investigation can, in and of itself, be a grounds [sic] for denial of the claim.

> Do you insist on telling him not to answer that question?

Not only did the instruction stand, but when counsel for the insurance company continued to press the question, LaBarca responded sarcastically, "let me look at your taxes.... Let me look at your tax returns."

The insurance company thereafter denied coverage on the grounds of giving false testimony during the examination and failure to cooperate, and plaintiff thereupon commenced this action.

## DISCUSSION

 The policy language at issue here is coextensive with the requirements of New York Insurance Law § 3404(e).[2] In the context of suspected arson, New York courts have construed this language broadly, describing it as "much broader than the right of discovery under the CPLR. By its terms the insured promises to render full and prompt assistance to discover the facts surrounding the loss and anything less re-

sults in a breach of contract." *Dyno–Bite, Inc. v. Travelers Cos.,* 80 A.D.2d 471, 474, 439 N.Y.S.2d 558, 560–61 (4th Dep't.1981), An insurance company that reasonably suspects arson has the right to obtain "all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights to enable them to decide upon their obligations, and to protect them against false claims." *Id.* (quoting *Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81, 94–95, 3 S.Ct. 507, 514–15, 28 L.Ed. 76 (1884)).[3]

*Harary v. Allstate Ins. Co.,* 988 F.Supp. 93 (E.D.N.Y.1997), also involved an arson fire in which the insurance company rejected the claim for, *inter alia,* breach of the cooperation clause. There, upon being asked to provide her tax returns for two specific years, the plaintiff averred that she had not filed tax returns for those years, but would estimate her income instead. When she continually failed to deliver on that promise, Allstate obtained what purported to be her tax returns for the subject years from the plaintiff's mortgagee, but the plaintiff disavowed having ever filed those returns. Like plaintiff here, the plaintiff in *Harary* asserted that the insurance company's denial of the claim for lack of cooperation was improper because: (1) she had provided many documents and answered many questions but

---

**2.** N.Y. Ins. Law § 3404(e) (McKinney 2008), provides:

> The insured, as often as may be reasonably required ... shall submit to examinations under oath by any person named by this Company, and subscribe the same; and as often as may reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representatives, and shall permit extracts and copies thereof to be made.

**3.** The broad duty applicable in suspected arson cases must be distinguished from other property damage cases in which the insured's involvement is not suspected, *see Harary v. Allstate Ins. Co.,* 988 F.Supp. 93, 103–04 (E.D.N.Y.1997) (distinguishing *Happy Hank Auction Co. v. American Eagle Fire Ins. Co.,* 1 N.Y.2d 534, 538–39, 154 N.Y.S.2d 870, 136 N.E.2d 842 (1956), on the ground, *inter alia,* that it was a damaged inventory case rather than an arson case), or claims for personal injuries. *See, e.g., Kagan v. Taylor,* 558 F.Supp. 396, 398 (E.D.N.Y.1983); *2423 Mermaid Realty Corp. v. New York Prop. Ins. Underwriting Ass'n,* 142 A.D.2d 124, 131–32, 534 N.Y.S.2d 999, 1004 (2d Dep't 1988); *Dyno–Bite,* 80 A.D.2d at 476, 439 N.Y.S.2d 558.

only failed to answer two (the estimated income for the two tax years); and (2) the information could not be material because once the insurance company learned that the fire was an arson fire and that she had attempted to sell the house before the fire, nothing concerning her income could alter the insurance company's evaluation of the claim.

Judge Trager rejected these arguments, noting that "[i]n view of the fact that direct proof of arson is seldom available .... [i]nformation gleaned from the tax returns of an individual insured or the officers of a corporate insured can be of crucial significance ...". *Id.* at 104 (*quoting 2423 Mermaid Realty Corp. v. New York Prop. Ins. Underwriting Ass'n*, 142 A.D.2d 124, 131, 534 N.Y.S.2d 999, 1003 (2d Dep't.1988)). The Court also specifically rejected the argument that the insured could pick and choose which information to provide, and that the failure to provide some information could be rendered immaterial by providing other information: "Plaintiff's argument would render New York's statutory cooperation clause, as found in standard fire insurance policies, a nullity." *Id.* at 105, "Materiality," the Court held, is not "determined by the *ultimate* importance of the information to the insurer but rather its relevance to the investigation at the time asked." *Id.* (*citing Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 183 (2d Cir.1984)).

In the instant case, plaintiff attempts to distinguish *Harary* on the ground that here, plaintiff did provide copies of the requested insurance returns, as well as an abundance of other documents. It is true that the plaintiff's non-cooperation in *Harary* was more egregious than that alleged here; the plaintiff in *Harary* promised to provide income information, then claimed an inability to provide that information,

and disavowed non-filed tax returns, so that the insurance company had no information about her income for the subject years. In addition, because plaintiff here has given defendant the tax returns, and they show an income of only $9000, defendant is in a position to argue that plaintiff had a motive for arson even without plaintiff's acknowledgement that the returns are accurate.

However, I do not believe that these distinctions are sufficient to render the answers to the questions concerning the accuracy of the tax returns immaterial. Having the tax returns, but also having plaintiff's refusal to acknowledge their accuracy, is only marginally better than not having them at all. It is not much different than if, instead of providing the tax returns, LaBarca had said in answer to a question that he would write his income down on a piece of paper, but would refuse to confirm that the number he wrote down was accurate. Defendant still has been deprived of information to which it was entitled to determine the nature and circumstances of the arson. "The most common example of a willful failure to cooperate is when the insured declines to answer questions about his personal finances or to turn over personal tax records." *Staten Island Supply Co., Inc. v. Lumbermen's Casualty Co.*, No. 02–cv–6390, 2005 WL 711678, at *6 (E.D.N.Y. March 29, 2005). Moreover, although there are some facts that plaintiff has disclosed that would allow defendant to argue that there was a motive for arson, that is not much different than the argument rejected in *Harary* that there was "sufficient" circumstantial evidence to argue motive such that additional evidence would be immaterial. When it comes to a cooperation clause, the duty is not satisfied by volume; the insured must give complete disclosure concerning his financial affairs.[4]

4. Plaintiff's reliance on Judge Trager's later decision in *Staten Island Supply Co., Inc.* is

In addition, plaintiff's responses to the question as to whether its principal's tax returns are accurate would address more than just motive. The insurance company is entitled to know, in evaluating the credibility of the story given by plaintiff's principal, whether he is someone who is prone to lie under oath, as would be the case if he filed false tax returns. That is material to its investigation.

In this regard, although materiality needs to be measured at the time of the investigation, not trial, *see Harary*, 988 F.Supp. at 105, it is a useful analogy to consider what a jury would be allowed to hear on this issue. In being asked to determine whether plaintiff's principal had committed the arson, the jury would be allowed to consider the answer to the question of whether he had filed false tax returns as bearing on his credibility. "Evidence that a witness had made false statements in a tax return is obviously a matter which affects the witness's credibility." *Chnapkova v. Koh*, 985 F.2d 79, 82 (2d Cir.1993); *accord, Chamblee v. Harris & Harris, Inc.*, 154 F.Supp.2d 670, 681 (S.D.N.Y.2001); *Mischalski v. Ford Motor Co.*, 935 F.Supp. 203, 208 (E.D.N.Y.1996).

It is axiomatic that a jury is not allowed to consider evidence concerning an immaterial fact. Yet if evidence of filing false tax returns is deemed a material fact in the comparatively restricted context of admissible evidence at trial, then it seems equally axiomatic that it is at least as

material in the broader context of an arson investigation that an insurance company is entitled to make pursuant to the terms of the policy. Stated otherwise, since the duty to cooperate is broader than the scope of discovery, *see Dyno–Bite, Inc.*, 80 A.D.2d at 474, 439 N.Y.S.2d at 560, and the scope of discovery is broader than the scope of admissible at trial, *see generally Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 20 (E.D.N.Y.1996), I cannot see how the information of whether plaintiff's principal has lied under oath could be deemed immaterial to defendant's arson investigation. We instruct juries in virtually every case that they may consider *falsus in uno, falsus in omnibus;* there is no reason why the insurance company should be deprived of information to make that same determination in the context of an arson investigation.

■ The Second Circuit has made it clear that summary judgment is appropriately granted for failure to cooperate in an arson investigation when the insured's action is deemed willful. *See Rosenthal v. Prudential Property & Cas. Co.*, 928 F.2d 493 (2d Cir.1991). Here, defendant's attorney did not simply ask the question and then end the examination or move on when plaintiff refused to answer. Instead, he urged plaintiff to reconsider its position and he warned of the consequences of noncooperation several times. He was repeatedly rebuffed. Under these circumstances, no reasonable jury could find that plaintiff's refusal to cooperate was anything other than willful.[5]

---

misplaced. That was not an arson case, *see* n. 3 *supra,* and more importantly, the only basis for the insured's refusal to answer certain questions was that those specific questions had been asked and answered. The Court effectively sustained the asked and answered objection and found that the insurance carrier's counsel had been harassing the witness.

**5.** The Court notes that at the premotion conference, both sides agreed that the issue on this motion presented only a question of law

for the Court to determine as there was no dispute about the material facts. That view is consistent with plaintiff's opposition papers, which do not assert that there is an issue of fact.

In addition, defendant has argued that it should prevail here because the burden of proof to show lack, of cooperation is by a preponderance of the evidence, not clear and convincing evidence. Defendant cites *Harary* as authority for this statement, but I think that, in this regard, *Harary* was in error.

## CONCLUSION

The motion for summary judgment is granted. The Clerk is directed to enter judgment in favor of defendant.

**SO ORDERED.**

Burden of proof refers to the standard for weighing evidence at trial to reach a conclusion on a factual issue. The concept is generally inapplicable to a motion for summary judgment, since the question is whether the evidence raises a factual issue, not how the standard of proof would apply to the resolution of that issue. When the term burden of proof is used in the context of a summary judgment motion, it generally refers to the issue of which party has the burden to show the presence or absence of a factual issue. *See generally* 10A Wright, Miller and Kane, *Federal Practice and Procedure* § 2727 (West 2008). In a case where there is a dispute over what an insured had done to cooperate, or where a jury, reviewing those facts, could reasonably conclude either way that the insured did or did not cooperate, then the burden to prove non-cooperation by a preponderance of the evidence would apply at trial. As noted above, however, neither party contends that there is factual dispute as to what plaintiff did to cooperate and I hold that no reasonable jury could find that plaintiff substantially complied with the cooperation clause.